**MIDWAY FARMS, a California corporation, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant–Appellee.**

No. 98–16592.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1999.

Decided Aug. 24, 1999.

Brian C. Leighton (argued), Clovis, California, for plaintiff-appellant.

Frank W. Hunger, Paul L. Seave, Barbara C. Biddle, Mark W. Pennak (argued), United States Department of Justice, Washington, D.C., for defendant-appellee.

Before: REINHARDT, O'SCANNLAIN, and FLETCHER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a raisin processor has standing to file an administrative petition under the Agricultural Marketing Agreement Act challenging the Raisin Administrative Committee's determination that it is a "handler" subject to the Federal Raisin Marketing Order.

## I

Midway Farms, Inc. ("Midway") is a California corporation that purchases off-grade raisins and various raisin residue matter that raisin handlers grade out of the raisins intended for human consumption. Midway processes these products into distillery material, cattle feed, and

concentrate material. It does *not* sell "raisins" as that term is defined in 7 C.F.R. § 989.5.[1]

The United States Department of Agriculture ("Department") is responsible for the promulgation and enforcement of the Federal Raisin Marketing Order ("Raisin Marketing Order") pursuant to 7 U.S.C. § 601, *et seq.* Under the Raisin Marketing Order, raisin handlers must account for the disposition of off-grade raisins, other failing raisins, and raisin residue material. To administer the marketing order regulating the handling of California raisins, *see* 7 C.F.R. Part 989, the Secretary of Agriculture ("Secretary") established a Raisin Administrative Committee ("Committee"). *See id.* § 989.26.

On June 13, 1994, the Committee sent Midway a letter requiring it to complete and to submit certain forms because it was a processor and, as such, a "handler" subject to the Raisin Marketing Order. *See id.* §§ 989.13, 989.15.[2] Midway, however, took the position that it was not a raisin "handler" because that term encompasses only "first handlers," and not those who purchase from handlers.[3] Nevertheless, to avoid possible penalties for non-compliance with the Marketing Order, *see* 7 U.S.C. § 608c(14), Midway began filling out the forms demanded by the Committee and has continued to comply with the Committee's demands to the present date.

On July 1, 1994, Midway filed an administrative petition with the Secretary pursuant to 7 U.S.C. § 608c(15)(A), seeking a declaration, *inter alia,* that it is not subject to the Raisin Marketing Order. Midway instituted this proceeding in part because the filing of an administrative petition tolls civil penalties pending its resolution so long as the petition is filed and prosecuted in good faith. *See id.* § 608c(14)(B). The Department filed a motion to dismiss the petition, arguing that the plain language of section 608c(15)(A) made clear that only a "handler" could file an administrative petition and that Midway did not qualify because it was claiming *not* to be a handler. Curiously, the Department did not discuss the Committee's determination that it was indeed a "handler" for purposes of the Marketing Order.

The Secretary then subpoenaed various documents from Midway, which in turn provided them with the names of its customers and the sales prices redacted. Fearing that the Secretary's representatives were untrustworthy, Midway refused to provide unredacted documents to the Secretary, explaining that, if the names of its buyers and its sales prices were made public, those from whom it purchased off-grade raisins would contract directly with those to whom it sold, thereby cutting it out as the middleman. The Secretary deemed the redacted documents nonresponsive. Midway then offered to allow

---

**1.** "'Raisins' means grapes of any variety grown in the area, from which a significant part of the natural moisture has been removed by sun-drying or artificial dehydration, either prior to or after such grapes have been removed from the vines." *Id.*

**2.** *Handler* means: (a) Any processor or packer; (b) any person who places, ships, or continues natural condition raisins in the current of commerce from within the area to any point outside thereof; (c) any person who delivers off-grade raisins, other failing raisins or raisin residual material to other than a packer or other than into any eligible non-normal outlet; or (d) any person who blends raisins: *Provided,* That blending shall not cause a person not otherwise a handler to be a handler on account of such

blending if he is either: (1) A producer who, in his capacity as a producer, blends raisins entirely of his own production in the course of his usual and customary practices of preparing raisins for delivery to processors, packers, or dehydrators; (2) a person who blends raisins after they have been placed in trade channels by a packer with other such raisins in trade channels; or (3) a dehydrator who, in his capacity as a dehydrator, blends raisins entirely of his own manufacture.

7 C.F.R. § 989.15.

**3.** Midway argued alternatively that the Raisin Marketing Order, to the extent it does cover Midway, is contrary to the Agricultural Marketing Agreement Act, 7 U.S.C. § 601, *et seq.*

the Administrative Law Judge ("ALJ") to review the unredacted documents *in camera* and specifically agreed to permit the manager of the Committee to look at them. The ALJ initially approved this proposal, but later concluded that he lacked authority to review documents *in camera.*

On May 10, 1996, the ALJ dismissed the petition on the basis that Midway could not show that it was a "handler" under section 608c(15)(A). Midway appealed to the Secretary's Judicial Officer, who determined that, because it denied being a handler subject to the Marketing Order, it lacked standing to bring an administrative petition. The Judicial Officer further concluded that the ALJ, in initially agreeing to review documents *in camera,* erred in giving credence to Midway's claim that the Secretary's agents were untrustworthy and would leak information to Midway's competitors.

Midway subsequently filed a petition for review in the United States District Court of the Eastern District of California pursuant to 7 U.S.C. § 608c(15)(B). It argued that the ALJ and Judicial Officer erred in concluding that it lacked standing to file an administrative petition and also sought a declaration that the ALJ had the authority to review documents *in camera.*

Midway filed a motion for summary judgment in which it conceded that only a "handler" can file an administrative petition with the Secretary and argued that, for purposes of section 608c(15)(A), it *was* a "handler" because it was a person "to whom a marketing order is sought to be made applicable." 7 C.F.R. § 900.51. The district court denied this motion. Noting that section 608c(15)(A) limits its application not just to any handler, but more

specifically to "any handler *subject to an order,*" 7 U.S.C. § 608c(15)(A) (emphasis added), the district court concluded that Midway was not a "handler subject to an order" because Midway itself claimed *not* to be subject to the Marketing Order and because, notwithstanding the Committee's determination to the contrary, the Secretary had not yet determined that it was subject to the Marketing Order. The court also denied Midway's motion for summary judgment on its claim that the ALJ had authority to review documents *in camera,* noting that Midway failed to cite any supporting legal authority. Acting *sua sponte,* and after giving Midway an opportunity to respond, the district court granted summary judgment in favor of the Department.

Midway appeals the grant of summary judgment in favor of the Department as well as the denial of its motion for summary judgment on its claim that the ALJ had authority to review documents *in camera.*

## II

■ The operative statute allows "[a]ny handler subject to an order" to file an administrative petition with the Secretary. 7 U.S.C. § 608c(15)(A).[4] The term "handler" is defined by regulation for purposes of section 608c(15)(A) as "any person who, by the terms of a marketing order, is subject thereto, or to whom a marketing order is sought to be made applicable." 7 C.F.R. § 900.51(i).[5] Neither party contends, for purposes of this action, that Midway is a "person who, by the terms of a marketing order, is subject thereto." Thus, the sole question is whether Midway

---

**4.** Section 608c(15)(A) provides in relevant part that:

> Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom.

*Id.* § 608c(15)(A).

**5.** Courts must defer to an agency regulation defining a statutory term unless contrary to clearly expressed congressional intent. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

is a "person ... to whom a marketing order is sought to be made applicable." 7 C.F.R. § 900.51(i).

■ Midway contends that, notwithstanding the fact that it is seeking a declaration that it is *not* a "handler" as defined in 7 C.F.R. § 989.15, it is deemed a "handler" for purposes of 7 U.S.C. § 608c(15) and 7 C.F.R. § 900.51(i) because the Committee sought to make it subject to the Raisin Marketing Order. The Department concedes that the Committee sought to apply the Raisin Marketing Order to Midway, but regards that fact as irrelevant. According to the Department, the Committee is powerless to apply the Marketing Order because it is the Secretary, rather than the Committee, who makes the final determination on handler status. The Department contends that Midway is not a handler for purposes of section 608c(15)(A) unless the *Secretary* seeks to make the Raisin Marketing Order applicable to Midway.

The Department's rather strained argument depends crucially on the curious contention that the Committee does not have authority to seek to apply the Raisin Marketing Order to Midway. However, the Department does not cite any evidence in the record or legal authority (other than the district court's order) for this proposition. A review of the Secretary's own regulations reveals that the Committee has the power to "administer the terms and provisions of [the Raisin Marketing Order]," 7 C.F.R. § 989.35(a). The authority to "administer" the Raisin Marketing Order is essentially the power to apply the Order. In addition, the Committee has the power to "make rules and regulations to effectuate the terms and provisions of,"

to "recommend to the Secretary amendments to," and to "receive, investigate, and report to the Secretary complaints of violations of" the Raisin Marketing Order. *Id.* § 989.35.[6]

The Secretary's own regulations make clear that the Committee *does* have the authority to apply the Raisin Marketing Order. Because it cannot be controverted that the *Committee* did in fact seek to apply the Raisin Marketing Order to Midway, we conclude that Midway is a person to whom a Marketing Order has been sought to be made applicable and is thus a "handler," if only for purposes of section 608c(15). Accordingly, we hold that Midway has standing to file an administrative petition with the Secretary under section 608c(15)(A). Of course, we express no views on the ultimate merits of whether Midway is a "handler" for purposes of the Raisin Marketing Order; our conclusion is limited to the narrow question of standing to petition.

## III

■ For the foregoing reasons, we remand to the Secretary with directions to rule on the merits of Midway's petition. *See* 7 U.S.C. § 608c(15)(B) ("If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires."). Upon remand, it is within the inherent powers of the ALJ, in his discretion, to conduct hearings *in camera* upon showing of good cause. *Cf. Norinsberg Corp. v.*

**6.** Other of the Secretary's regulations vest the Committee with similar authority to apply the Marketing Order: "Each handler shall, upon request of the committee, file promptly with a committee a certified report, showing such information as the committee shall specify with respect to any raisins which were held by him"; "Each handler shall submit to the committee in accordance with such rules and procedures as are prescribed

by the committee, with the approval of the Secretary, certified reports, for such periods as the committee may require, with respect to his acquisitions of each varietal type of raisins during the particular period covered by such report...." *Id.* § 989.73. Also, the Committee has the duty "to investigate compliance and to use means available to it to prevent violations of [the Raisin Marketing Order]." *Id.* § 989.36.

*United States Dep't of Agric.,* 47 F.3d 1224, 1228 (D.C.Cir.1995); *Morgan v. Secretary of Hous. & Urban Dev.,* 985 F.2d 1451, 1456 (10th Cir.1993). To preserve the meaningfulness and efficacy of any *in camera* hearings, the ALJ may allow Midway to submit redacted materials or may impose protective conditions upon any materials submitted by Midway for *in camera* review. *Cf.* 7 C.F.R. § 900.55(c) (setting forth the powers of ALJs, authorizing them to rule upon motions and requests, to examine witnesses and receive evidence, to admit or exclude evidence, and to "[d]o all acts and take all measures necessary for the maintenance of order at the hearing and the efficient conduct of the proceeding").

REVERSED and REMANDED.