**BOULDER MEADOWS; Countryside Village Associates/Boulder Limited Partnership; Uniprop, Inc.; GP Countryside Boulder Corporation, Plaintiffs–Appellants,**

v.

**Barbara SAVILLE, Defendant–Appellee.**

No. 99CA0687.

Colorado Court of Appeals,
Div. V.

April 13, 2000.

---

Fred M. Hamel, Denver, Colorado; Coughlin & Kitay, P.C., Theresa L. Kitay, Norcross, Georgia, for Plaintiffs–Appellants.

Sanderson & Associates, P.C., David S. Sanderson, Boulder, Colorado; Mary Helen Miller, Boulder, Colorado for Defendant–Appellee.

Hale Hackstaff Tymkovich & ErkenBrach, L.L.P., Timothy M. Tymkovich, Richard A. Westfall, Michael D. Siffring, Denver, Colorado, for Amicus Curiae Colorado Manufactured Housing Association.

Frank & Finger, P.C., Terrence Murray, Darrell Damschen, Evergreen, Colorado, for Amicus Curiae Colorado Manufactured Housing Association (On the Brief).

Opinion by Judge CASEBOLT.

In this unlawful detainer action involving a counterclaim for violation of federal and state fair housing laws, plaintiffs, Boulder Meadows; Countryside Village Associates/Boulder Limited Partnership; Uniprop, Inc.; and GP Countryside Boulder Corporation, appeal the judgment entered after a bench trial in favor of defendant, Barbara Saville. We affirm.

Boulder Meadows is a mobile home park owned by Countryside Village Associates. GP Countryside Boulder Corporation is the general partner of Countryside Village, and Uniprop, Inc., is the managing agent of the park. Collectively, these entities are referred to as Boulder Meadows.

Saville was a tenant at Boulder Meadows for over ten years. Under the terms of her tenancy, Saville was required to pay lot rent and was responsible for the exterior maintenance of her home and the home site.

Eight years into her tenancy, Boulder Meadows posted a notice to quit on Saville's home, asserting Saville's failure to maintain her home and lot site. Saville responded by tendering a then-due rent check with a letter explaining that her medical condition "slow[ed] her up" when doing physical and mental labor and caused dizziness and seizures. In response, Boulder Meadows returned her rent check and commenced an unlawful detainer action. Saville prevailed in the trial, and Boulder Meadows appealed.

While the appeal was pending, Boulder Meadows sent Saville two notices requesting her to perform maintenance and make certain repairs to her home and lot site. Because she was physically unable to perform the maintenance personally, Saville posted advertisements offering free rent in her home in exchange for maintenance services, but she received no response.

Approximately six months later, and shortly after she received the second notice requesting her to make repairs, Saville invited a caretaker to live in her home in exchange for performing maintenance work. The caretaker was a former park resident who had been recently evicted from the park for nonpayment of rent.

Soon after the caretaker moved into Saville's home, Boulder Meadows' resident manager informed her that the caretaker's presence in her home was a violation of Section N–5 of Boulder Meadows' Community Covenants, which prohibited anyone other than persons listed on the lease agreement from living on the premises. Section N–5 also required that guests be registered with the management and that such persons could only visit residents for up to thirty days in any calendar year. Further, the covenants provided that unregistered persons would be deemed trespassers and immediately evicted.

In response to Boulder Meadows' appeal in the unlawful detainer action, the case was remanded and Saville prevailed in the retrial. On the same day as the conclusion of the retrial, Boulder Meadows posted on Saville's door an unwarranted five-day rent demand. Boulder Meadows later withdrew this rent demand. Shortly afterward, Boulder Meadows issued a notice to quit to Saville for violation of covenant rules N and N–5, and it also initiated additional eviction proceedings.

In response, Saville delivered a letter to Boulder Meadows requesting a reasonable accommodation for her disability. Boulder Meadows responded with three alternative accommodations, all of which Saville rejected as unreasonable. Saville filed a counterclaim in the eviction action alleging that Boulder Meadows had failed reasonably to accommo-

date her disability and had violated federal and state fair housing laws.

After a bench trial, the trial court entered judgment in favor of Saville on all claims and awarded her compensatory and punitive damages totaling $150,000.

## I.

■ Boulder Meadows first asserts the trial court erroneously shifted the burden of proof concerning alleged violations of the federal and Colorado fair housing acts. We disagree.

The Colorado Fair Housing Act (CFHA), § 24–34–502.2, C.R.S.1999, prohibits discriminatory housing practices. The statute makes it unlawful for any person to discriminate in the sale or rental of a dwelling to any renter because of a disability of the renter, or to discriminate in the terms, conditions, or privileges of rental of a dwelling because of a disability of the renter. Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a renter equal opportunity to use and enjoy a dwelling. Section 24–34–502.2(2)(b), C.R.S.1999.

The federal Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3601, *et seq.*, (1999) contains nearly identical language prohibiting discrimination.

Because the CFHA is almost identical to the FHAA, federal case authority is persuasive in interpreting the provisions of the CFHA. *Weinstein v. Cherry Oaks Retirement Community*, 917 P.2d 336 (Colo.App. 1996). The United States Supreme Court has stated that the FHAA must be given a "generous construction" to carry out a "policy that Congress consider[s] to be of the highest priority." *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 211–212, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415 (1972).

■ As pertinent here, to prevail on a FHAA claim, a plaintiff has the burden of proving discrimination against any person in the terms, conditions, or privileges of rental of a dwelling because of a handicap. *Roe v. Housing Authority*, 909 F.Supp. 814 (D.Colo.

1995). Under the CFHA, a complainant has a similar burden of proof when a disability is involved. *Weinstein v. Cherry Oaks Retirement Community, supra.* A handicap and a disability have the same meaning under state and federal law.

■ A plaintiff may establish discrimination by demonstrating that the challenged regulation discriminates against disabled persons on its face and serves no legitimate government interest. Alternatively, a complainant must show either discriminatory intent or discriminatory impact. Discriminatory intent is proved by showing that disabilities like those of the complainant were, in some part, the basis for the policy being challenged. Discriminatory impact is shown by proof that a given policy or practice has a greater impact upon disabled than non-disabled persons. *Weinstein v. Cherry Oaks Retirement Community, supra.*

Here, Saville asserted discriminatory impact, contending that the rules and covenants requiring her to maintain her home and the lot site had a greater impact on her than they did on non-disabled persons. The trial court found that Saville had proved by a preponderance of the evidence that she was disabled, and that Boulder Meadows had discriminated against her because of her disability by failing to provide any reasonable accommodation. The court specifically found that the three alternatives Boulder Meadows offered were not reasonable, and held that the alternative Saville had proffered, allowing the caretaker to remain, was a reasonable accommodation.

Hence, the trial court found that Saville had met her burden of proving all the required elements of her claim. Boulder Meadow's argument is based on one of the concluding paragraphs of the court's order, in which it added that "[Boulder Meadows] failed to prove by a preponderance of the evidence that no reasonable accommodation could have been made to Ms. Saville to allow her the use and enjoyment of her home." Boulder Meadows asserts that this phrase indicates the court improperly shifted the burden of proof to it, rather than requiring

Saville to prove the elements of the claim. We reject this contention.

■ In some circumstances, once a plaintiff has proven a prima facie case of discriminatory impact, the burden may shift to the defendant to demonstrate (1) that there was some legitimate, nondiscriminatory reason for its action, (2) that no less discriminatory alternative was available, and (3) that no reasonable accommodation could be made. *See North Shore–Chicago Rehabilitation Inc. v. Village of Skokie,* 827 F.Supp. 497 (N.D.Ill. 1993); *Weinstein v. Cherry Oaks Retirement Community, supra.* However, Boulder Meadows did not assert at trial that no less discriminatory alternative was available or that no reasonable accommodation could have been provided to Saville. It acknowledged that it had a duty reasonably to accommodate Saville after she made an appropriate request, but contended that Saville could not show that it had failed reasonably to accommodate her.

Accordingly, the trial court's statement about Boulder Meadows' failure to prove that no reasonable accommodation could have been made was gratuitous and irrelevant to the issues before it. Hence, the error, if any, is harmless, and reversal is not required. *See* C.R.C.P. 61; *Stegall v. Stegall,* 756 P.2d 384 (Colo.App.1987).

## II.

Boulder Meadows next contends the trial court erroneously held that it had failed to provide a reasonable accommodation. We disagree.

### A.

■ Boulder Meadows first asserts the trial court erred because it imposed a duty to accommodate upon Boulder Meadows before such duty actually arose. We reject this assertion.

■ A housing provider's duty reasonably to accommodate a person with a disability arises when the provider becomes aware of the person's disability and the disabled person makes a request for a reasonable accommodation. *See Jankowski Lee & Assoc. v.*

*Cisneros,* 91 F.3d 891 (7th Cir.1996) (because petitioners were aware tenant was handicapped, when tenant requested an assigned parking space as a reasonable accommodation, petitioners had a duty to make some reasonable accommodation).

Here, the trial court found that Saville made a written request for accommodation and that Boulder Meadows' obligation reasonably to accommodate Saville arose on that day. The court then properly held that, once Saville made that request, Boulder Meadows had the burden to offer a reasonable accommodation. Thus, we reject Boulder Meadows' contention that the trial court imposed a duty before it arose.

### B.

■ Boulder Meadows next contends that it offered Saville reasonable accommodation, that Saville's requested accommodation was not reasonable, and that the trial court's findings to the contrary are clearly erroneous. Again, we disagree.

■ Colorado and federal fair housing acts create a statutory right to a reasonable accommodation upon proof of a disability and an appropriate request. *See U.S. v. California Mobile Home Park Management Co.,* 29 F.3d 1413 (9th Cir.1994). Whether an accommodation is reasonable is a question of fact, determined by a close examination of the particular circumstances. *Jankowski Lee & Assoc. v. Cisneros, supra.*

■ In evaluating the reasonableness of an accommodation, a trial court may consider the extent to which the accommodation would undermine the legitimate purposes and effects of existing regulations and the benefits the accommodation would provide to the disabled person. The court may also consider whether alternatives exist to accomplish the benefits more efficiently. *Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597 (4th Cir.1997).

■ The findings of the trier of fact must be accepted on review unless they are so clearly erroneous as not to have support in the record. This standard of review recognizes that the trial judge's presence during

the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

Here, Saville's letter invoked her right to reasonable accommodation and, in turn, imposed a duty on Boulder Meadows reasonably to accommodate her. Thus, the issue is whether Boulder Meadows in fact provided a reasonable accommodation. *See Jankowski Lee & Assoc. v. Cisneros, supra* (plaintiff's suggested accommodations were simply alternative means to the end that is at issue in all FHAA cases; *i.e.,* a reasonable accommodation).

Boulder Meadows offered Saville three alternatives. The first required the caretaker to move out and allowed Saville to sublease to a qualified resident. The second required her to leave the mobile home vacant, pay rent, abide by the rules of the park, and pay a maintenance fee of $25 per month in return for which Boulder Meadows would maintain her yard. The third alternative required Saville to sell or move her mobile home from the park within sixty days while paying rent in the interim.

The trial court found these alternatives were not reasonable. The first alternative was no accommodation at all because it simply required Saville to comply with rule N–5 of the covenants. The second alternative was unreasonable because it required her to move out, and it was financially impractical "given her income and the monthly rent she was already paying to [Boulder Meadows]. Even with the savings on utilities, the court finds such fee to be unreasonable particularly for a person who is virtually destitute and who has not been able to afford a telephone. . . ."

The court found the third alternative was an absolute prohibition against her use and enjoyment of her home.

The court further found that Boulder Meadows could have made any of several other reasonable accommodations, and it ordered Boulder Meadows to provide maintenance of Saville's lot without any charge,

given its receipt of revenue in excess of $3 million per year from this park.

■ We conclude that the record sustains these findings. While paying a maintenance fee of $25 per month may, in some circumstances, be quite reasonable, we cannot say that such a fee is reasonable as a matter of law under the circumstances found here by the trial court. Indeed, the FHAA standards regarding reasonable accommodation may require landlords to assume reasonable financial burdens in accommodating disabled residents. *U.S. v. California Mobile Home Park Management Co., supra.*

Because the court's findings of fact have record support and are not clearly erroneous, we may not disturb them on review.

### III.

■ Boulder Meadows next asserts the trial court erred in awarding damages to Saville for emotional distress. We disagree.

■ When the trial court's factual determination of damages is supported by substantial evidence, an appellate court will not disturb it. *Morgan v. Secretary of Housing and Urban Development,* 985 F.2d 1451 (10th Cir.1993).

■ Compensatory damages in a housing discrimination case may be awarded for humiliation and emotional distress if established by testimony or inferable from the circumstances. *Johnson v. Hale,* 940 F.2d 1192 (9th Cir.1991).

■ Medical evidence concerning physical symptoms is not required. The fact that the damages for emotional distress are not capable of precise measurement does not bar recovery. *Morgan v. Secretary of Housing and Urban Development, supra.*

Here, the trial court found Saville suffered increased stress and related symptoms of stress, humiliation from having to relive feelings associated with her disability and disclose more details of her life than would have been necessary had Boulder Meadows provided a reasonable accommodation, fear of loss of her home and eviction, an increase in the number of visits to her doctor, and an

increase in medication. We conclude there is evidence in the record to support this finding.

We reject Boulder Meadows' contention that most of the damages the trial court found were caused by Saville's decision to file a counterclaim, and not by any action of Boulder Meadows. Because the court's findings do not state that Saville's decision to file a counterclaim was a cause of her emotional distress, Boulder Meadows' contention has no support in the record.

Moreover, because we conclude the record as a whole supports the amount of the emotional distress award, we reject Boulder Meadows' contention that it is excessive.

## IV.

■ Boulder Meadows next asserts the trial court erred in awarding punitive damages because its actions were not motivated by evil intent nor performed with a reckless or callous disregard for Saville's fair housing rights. We disagree.

■ In federal cases, a trial court may award punitive damages when it finds, by a preponderance of the evidence, that a defendant's conduct was motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Asbury v. Brougham,* 866 F.2d 1276 (10th Cir.1989).

■ Section 13–21–102, C.R.S.1999, similarly provides that punitive damages may be awarded when the injury complained of is attended by circumstances of fraud, malice, insult, or a wanton and reckless disregard of the injured party's rights and feelings. Generally, a party must prove such damages beyond a reasonable doubt. *See Miller v. Byrne,* 916 P.2d 566 (Colo.App.1995); *but see Community Hospital v. Fail,* 969 P.2d 667 (Colo.1998) (burden of proof for punitive damages under Americans with Disabilities Act is preponderance of the evidence). The sufficiency of evidence to support an award of punitive damages is a question of law for the court. *Tri–Aspen Construction Co. v. Johnson,* 714 P.2d 484 (Colo.1986).

Here, the trial court found beyond a reasonable doubt that Boulder Meadows' actions were attended by circumstances showing a wanton and reckless disregard of Saville's rights and feelings. In support of its finding, the trial court noted that Saville's letter informing Boulder Meadows of her disability made Boulder Meadows well aware of the nature and extent of her disability when she requested a reasonable accommodation. The court did not suggest, as Boulder Meadows contends, that Boulder Meadows should have investigated the specifics of Saville's disability. Rather, the court merely considered Boulder Meadows' knowledge of Saville's disability in light of the fact that Boulder Meadows had continued to request Saville to perform maintenance it knew she was unable to perform and made no attempt to accommodate her before posting the notice to quit.

The trial court also noted that Boulder Meadows (1) posted an erroneous demand for rent on the same day Saville prevailed in the retrial of the unlawful detainer action and (2) posted a notice to quit asserting violation of regulations N and N–5 approximately twenty days after Saville's successful retrial in the eviction proceeding, even though it had known of the caretaker's presence for a substantial period before that action.

In holding that a punitive damages award was necessary to deter Boulder Meadows and other landlords from discriminating against persons with disabilities, the court also considered the undisputed fact that Boulder Meadows was well acquainted with and knowledgeable concerning the fair housing laws.

There is record support for the court's findings that Boulder Meadows acted with a wanton and reckless disregard. Accordingly, we find no abuse of discretion in the court's award of punitive damages.

## V.

■ Boulder Meadows next contends the trial court erroneously concluded that it should have evicted the caretaker individually, instead of attempting to evict Saville from the park. Boulder Meadows asserts that,

because this erroneous conclusion impacted the trial court's finding that Boulder Meadows failed reasonably to accommodate Saville and the court's award of damages, the decision should be reversed and the case remanded for a new trial. We disagree.

The trial court stated in its findings of fact that Saville's violation of regulation N–5 was not the real reason Boulder Meadows had attempted to evict Saville. The court also found the notice to quit posted a few weeks after Saville's success in the retrial was evidence of Boulder Meadows' motive or intent because it was posted six months after Boulder Meadows became aware that the caretaker was staying in Saville's home, and because, instead of evicting Saville's mobile home, Boulder Meadows could have treated the caretaker as a trespasser and filed an eviction action against him individually.

Relying on the Mobile Home Park Act, § 38–12–200.2, C.R.S.1999, Boulder Meadows contends, however, that it could not have evicted the caretaker from Saville's home because the landlord of a mobile home park does not have a right to possession of the mobile home, but only to possession of the site.

▮ We will not set aside a trial court's determination of damages unless the court's error is inconsistent with substantial justice:

> [N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

C.R.C.P. 61; *See Bohrer v. DeHart*, 961 P.2d 472 (Colo.1998).

▮ The amount of damages is within the sole province of the factfinder, and an award will not be disturbed unless it is completely unsupported by the record. *Jackson v. Moore*, 883 P.2d 622 (Colo.App.1994).

Here, even if we assume, without deciding, that the trial court erred in finding Boulder Meadows could have evicted the caretaker from Saville's home, such error was harmless. As previously discussed, there is other evidence in the record which supports the trial court's finding that Boulder Meadows failed reasonably to accommodate Saville, and the court's award of actual and punitive damages. Moreover, because this finding of the court related only to its conclusion to award punitive damages, we reject the contention that it fatally infects the court's liability determination.

The judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.