Earl MAY, Appellant,

v.

**COLORADO CIVIL RIGHTS COMMISSION, Appellee.**

No. 01CA0185.

Colorado Court of Appeals,
Div. I.

Feb. 14, 2002.

Law Offices of Gary S. Cohen, Gary S. Cohen, Christine Van Coney, Denver, Colorado, for Appellant.

Ken Salazar, Attorney General, Andrew M. Katarikawe, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge ROTHENBERG.

Respondent, Earl May (landlord), appeals the order of the Colorado Civil Rights Commission (Commission) affirming a decision of the Administrative Law Judge (ALJ) that concluded landlord's refusal to rent an apartment to complainant, Amy L. Earnest (tenant), was an unfair housing practice in violation of § 24–34–502(1)(a), C.R.S.2001. We affirm in part, reverse in part, and remand for further proceedings.

The tenant is a white female married to an African–American man with whom she had a child. In July 1998, the tenant responded to an advertisement for an apartment and was shown the available unit by the landlord's property manager. The property manager told her the landlord did not want children living in the apartment. However, after the tenant and the landlord spoke on the telephone, the landlord agreed to rent the apartment to her. Shortly thereafter, the landlord and the tenant signed a rental agreement, and the tenant gave him a postdated check as a deposit.

The next day, the tenant returned to the apartment and spoke to the property manager. When the tenant told the property manager her husband was African–American, the property manager advised the tenant to tell the landlord about her husband's race. The tenant did so by telephone, and two days later, the landlord left a message on her answering machine retracting his offer to rent the apartment to the tenant. The tenant later spoke to the landlord on the tele-

phone, at which time he claimed his reason for not renting to her was because her check for the deposit was unsupported by sufficient funds. The record discloses no other evidence regarding the validity of her check.

On August 11, 1998, the tenant filed charges of housing discrimination with the Commission, alleging that the landlord had violated the Colorado Fair Housing Act (CFHA), § 24–34–501, et seq., C.R.S.2001, by refusing to rent the apartment to her based on her familial status and her husband's race.

In March 1999, the Colorado Attorney General, who represented the tenant's interest throughout the proceedings, moved for an extension of ninety days to August 6, 1999, to serve the written notice of hearing and formal complaint on the landlord under § 24–34–306(11), C.R.S.2001 (requiring that written notice that a formal hearing will be held on the charge be served within 270 days of the filing of the charge). The reason given for the extension was "to ensure completion of the administrative process." On April 7, 1999, the extension was granted.

On August 3, 1999, a notice of hearing and formal complaint was served on the landlord. A hearing was set for November 29, 1999, which was 118 days after service was made on the landlord and two days before the Commission's jurisdiction would terminate in this case under § 24–34–306(4), C.R.S.2001 (requiring that hearing shall be commenced within 120 days after the service of written notice and complaint). The landlord did not answer the complaint.

On September 28, 1999, the tenant's counsel filed a motion "for leave to Commence and Continue Hearing," asserting that the tenant was scheduled to give birth during the week of November 29, 1999, and that she was the primary witness. Over the landlord's objection, a commissioner continued the hearing to January 4, 2000.

On November 29, the ALJ heard the opening statement of tenant's counsel. The ALJ also questioned counsel regarding the charges against the landlord and then continued the proceedings until January 4, 2000. At the January 2000 hearing, the tenant and her husband testified about the landlord's statements and conduct and about the damages they sustained when they were forced to remain in their current apartment. The landlord did not appear personally or through counsel at either proceeding.

Following the January hearing, the ALJ issued an initial decision finding the landlord had violated the CFHA. As relevant here, the ALJ awarded damages of $10,000 to the tenant and her family for emotional distress suffered by them and further ordered that the landlord pay a civil penalty of $10,000 to the state.

Thereafter, the landlord retained counsel and filed with the Commission a motion to dismiss and exceptions to the ALJ's initial decision. The Commission affirmed and adopted the ALJ's initial decision. The landlord also filed a C.R.C.P. 60(b)(1) motion contending he was entitled to a new trial because of his impaired mental state. The Commission denied that motion.

## I. Jurisdiction

Relying on § 24–34–306, C.R.S.2001, the landlord contends the Commission lacked subject matter jurisdiction to enter its order against him. We disagree.

Section 24–34–306(4) provides in relevant part:

> If the commission determines that the circumstances warrant, it shall issue and cause to be served ... a written notice and complaint requiring the respondent to answer the charges at a formal hearing before the commission, a commissioner, or an administrative law judge. *Such hearing shall be commenced within one hundred twenty days after the service of such written notice and complaint.* (emphasis added)

Section 24–34–306(11) provides in relevant part:

> If written notice that a formal hearing will be held is not served within two hundred seventy days after the filing of the charge, ... or *if the hearing is not commenced within the one-hundred-twenty-day period prescribed by subsection (4) of this section, the jurisdiction of the commission over the complaint shall cease* .... If any party

requests the extension of any time period prescribed by this subsection (11), *such extension may be granted for good cause by the commission,* a commissioner, or the administrative law judge, as the case may be, but the total period of all such extensions to either the respondent or the complainant shall not exceed ninety days each .... (emphasis added)

■ If the above requirements are not satisfied, § 24-34-306(11) explicitly states that the Commission loses jurisdiction over the complaint. The time limitations here are not merely directory. *See Wilson v. Hill,* 782 P.2d 874, 875 (Colo.App.1989).

## A. Good Cause

According to the landlord, the Commission's jurisdiction ended because the ninety-day extension to serve the notice of the formal hearing and complaint was granted without good cause, contrary to § 24-34-306(11). We disagree.

■ "Good cause" has been described as "substantial or legal justification, as opposed to an assumed or imaginary pretense." *Watso v. Colorado Dep't of Social Services,* 841 P.2d 299, 311 (Colo.1992). The good cause standard "requires objective evaluation of different interests in varied factual contexts, and its application is subject to judicial review." *Watso v. Colorado Dep't of Social Services, supra,* 841 P.2d at 311.

■ If the factual determinations in an agency's order are supported by substantial evidence in the record, we will uphold them. *Weinstein v. Cherry Oaks Retirement Community,* 917 P.2d 336 (Colo.App.1996). Also, an administrative body is presumed to act "fairly, with proper motives and upon valid reasons, in carrying out its statutory responsibilities." *Agnello v. Adolph Coors Co.,* 689 P.2d 1162, 1165 (Colo.App.1984).

■ Here, the reason given for requesting the extension was "to ensure completion of the administrative process." The commissioner stamped the motion "granted" without giving an explicit reason for the finding of good cause.

Nevertheless, the ninety-day extension did not impermissibly extend the jurisdiction of the commission. Rather, it allowed the maximum time permitted by the statute for an extension. Further, the written form granting the extension contains a list of factors that should be considered by the decision-maker, including the effect on the rights of any party of not granting the extension and any adverse impact the extension would have on the rights of any party. The record does not suggest the commissioner failed to consider these factors in granting the extension.

Thus, while the commissioner should have articulated the specific reasons for finding good cause, which would have allowed us to discern more accurately the rationale for the ruling, we may presume the commissioner acted for a valid reason, *see Agnello v. Adolph Coors Co., supra,* and there is no indication in the record that the landlord was prejudiced by the extension.

Under these circumstances, we reject the landlord's contention that the Commission lacked subject matter jurisdiction over the tenant's complaint based on an absence of good cause for the extension.

## B. Commencement of Hearing

The landlord also maintains that the Commission's jurisdiction ceased under § 24-34-306(11) because the hearing did not "commence" within 120 days of service of the written notice and complaint on him. The landlord contends the proceeding conducted on November 29, 1999, was insufficient to constitute a hearing, and therefore, the Commission lacked jurisdiction to take any later actions. Again, we disagree.

In order for the Commission to retain jurisdiction over the complaint where a formal hearing will be held, it must "commence such hearing" within 120 days from service of the notice and complaint on the respondent. *See* § 24-34-306(4), (11).

The term "hearing" is not defined under the statute, but in other contexts, it has been construed to include "the privilege to be present when a case is being considered and the right to present and support one's contentions by evidence and argument." *Westar*

*Holdings Partnership v. Reece,* 991 P.2d 328, 331 (Colo.App.1999)(emphasis omitted).

The hearing on November 29, 1999, was within the 120 day jurisdictional limit set forth in § 24–34–306(11). Because the tenant had used her entire ninety-day allowance to extend the time to serve the notice and complaint, the hearing had to commence by December 1, 1999, or the Commission would lose jurisdiction. On the tenant's motion, the ALJ allowed the hearing to commence on November 29 but continued it to January 4, 2000, 154 days after the notice and complaint were served on the landlord.

Here, although no testimony was taken and no evidence was presented at the November 29 hearing, the tenant's counsel made an opening statement, and the ALJ questioned counsel about the case. The landlord was not precluded from presenting an opening statement, but failed to appear. At the January 4 hearing, no opening statements were made, and the ALJ proceeded to hear testimony from the tenant and her husband. The landlord again failed to appear.

The landlord relies on cases from other jurisdictions to support his contention that the November 29 proceeding was insufficient to constitute the commencement of the hearing. *See In re Mutual Benefit Life Insurance Co.,* 140 B.R. 806 (D.Kan.1992); *Bridges v. Board of Fire & Police Commissioners,* 83 Ill.App.3d 190, 38 Ill.Dec. 608, 403 N.E.2d 1062 (1980); *In re Conservancy District No. 5,* 471 P.2d 879 (Okla.1970). However, those cases did not address whether the presentation of an opening statement would be sufficient to constitute the commencement of a hearing. Further, the landlord has cited no authority, and we are not aware of any, suggesting evidence must be received to constitute the commencement of an administrative hearing.

■ We conclude the presentation of an opening statement by counsel was sufficient to "commence the hearing" within the meaning of § 24–34–306(11), and we therefore reject the landlord's contention that the Commission lacked subject matter jurisdiction to issue later orders against the landlord.

## II. Mental Incompetence

The landlord next contends the Commission abused its discretion in denying his motion for a new trial pursuant to C.R.C.P. 60(b). He asserts that he was incompetent throughout the case and that the ALJ erred in failing to appoint a guardian ad litem for him. We are not persuaded.

■ A party may file a motion for relief from a final judgment or order pursuant to C.R.C.P. 60(b). The denial of such relief will be reversed only upon an abuse of discretion. *Continental National Bank v. Dolan,* 39 Colo.App. 16, 564 P.2d 955 (1977). The party seeking reversal on the grounds of excusable neglect has the burden of establishing the grounds by clear, strong, and satisfactory proof. *Craig v. Rider,* 651 P.2d 397 (Colo. 1982).

C.R.C.P 17(c) provides, in pertinent part: "The court shall appoint a guardian ad litem for an ... incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the ... incompetent person...."

■ For the purposes of this rule, the term "incompetent person" includes one who is "mentally impaired to the degree of being incapable of effectively participating" in legal proceedings. *People in Interest of M.M.,* 726 P.2d 1108, 1119 (Colo.1986).

■ The landlord presented to the Commission his doctor's statement indicating that the landlord had a "mild, but significant dementia" and that his "medical condition could significantly impair his memory, judgment and cognitive abilities." However, the doctor's letter did not indicate the landlord's mental condition would render him incapable of effectively participating in legal proceedings.

The landlord also filed an affidavit asserting he suffered a "mini-stroke" and that he did not fully "understand or appreciate the significance of the various papers mailed to [him] in this matter." But, the landlord submitted a letter to the Commission rebutting the claims against him and presenting an alternative theory why he refused to rent to the tenant. Also, he was deposed for over an

hour on November 2, 1999, during which time he gave responsive answers and apparently comprehended the nature of the deposition.

We thus conclude the Commission did not abuse its discretion in determining that the landlord presented insufficient evidence of his incompetency and in denying the landlord's C.R.C.P. 60(b)(1) motion.

### III. Evidentiary Issues

The landlord next contends the Commission abused its discretion in denying his exceptions concerning two evidentiary issues. We disagree.

■ The landlord asserts that the rental agreement between the landlord and the tenant did not constitute a lease. The landlord thus contends the Commission's order must be reversed because it was based on a finding that the landlord had leased the apartment to the tenant. Contrary to his contention, however, no formal contract is required to incur liability for an unfair housing practice under the CFHA, § 24–34–502, C.R.S. 2001. *See Morgan v. Secretary of Housing & Urban Development*, 985 F.2d 1451 (10th Cir.1993).

The landlord also asserts that certain statements made by the property manager should not have been considered by the fact finder. The landlord contends that the property manager, who was over ninety years old, was mentally incompetent at the time she made statements to the tenant indicating the landlord discriminated against racial minorities and families with children.

■ The record shows that the property manager did not testify at the hearing because she had suffered a mild stroke, but that her statements were admitted, presumably under CRE 801(d)(2)(D) (statements by a party's agent concerning a matter within the scope of employment are not hearsay). As to the property manager's mental condition, the record reflects that during the landlord's deposition, he admitted she was of "excellent mind." Thus, we perceive no error by the Commission in denying the landlord's exceptions concerning these two evidentiary issues.

### IV. Damages and Penalty

The landlord's final contentions relate to the award of damages to the tenant and the imposition of a civil penalty against him. The landlord contends the Commission considered impermissible factors in determining damages and thus awarded excessive damages for emotional distress. He further contends the Commission imposed an excessive civil penalty. We agree the damages award must be vacated and reconsidered for two reasons: (1) damages were awarded to nonparties; and (2) damages were awarded based on the landlord's lack of participation in the administrative proceedings before the Commission. The civil penalty likewise must be reconsidered because the ALJ considered inappropriate factors in imposing it.

■■ In reviewing the factual determination of damages, we consider whether the award is supported by substantial evidence in the record. We review the assessment of a civil penalty for an abuse of discretion. *Morgan v. Secretary of Housing & Urban Development, supra.*

■ Although there is little Colorado authority to guide us, federal cases interpreting the Federal Fair Housing Act are persuasive in interpreting provisions of the CFHA. *Boulder Meadows v. Saville*, 2 P.3d 131 (Colo.App.2000).

#### A. Award of Damages to Nonparties

Under § 24–34–502(1)(a), it is unlawful to discriminate in renting or leasing based on race or familial status:

It shall be an unfair housing practice and unlawful and hereby prohibited:

(a) For any person to refuse to ... rent, or lease, or to refuse to receive and transmit any bona fide offer to ... rent, or lease, or otherwise make unavailable or deny or withhold from any person such housing because of ... race [or] familial status ...; to discriminate against any person because of ... race [or] familial status ... in the terms, conditions, or privileges pertaining to any housing or the ... rental, or lease thereof. ...

In relevant part, § 24–34–501(1.6), C.R.S. 2001, defines "familial status" as "one or more individuals, who have not attained eighteen years of age, being domiciled with a parent."

The Commission has the authority to order various forms of relief against a respondent who has engaged in such unfair housing practices. Section 24–34–508, C.R.S.2001.

The Commission may "award actual damages suffered by the aggrieved person." Section 24–34–508(1)(e), C.R.S.2001. An "aggrieved person" is defined by the statute as "any person who claims to have been injured by a discriminatory housing practice or believes that he will be injured by a discriminatory housing practice that is about to occur." Section 24–34–501(1), C.R.S.2001.

 Such a person may collect actual damages for injuries including embarrassment, humiliation, and emotional distress. *Secretary v. Blackwell,* 908 F.2d 864 (11th Cir.1990). Emotional distress damages are awarded "for distress which exceeds the normal transient and trivial aggravation attendant to securing suitable housing." *Morgan v. Secretary of Housing & Urban Development, supra,* 985 F.2d at 1459. However, the respondent's actions must have a causal connection to the emotional distress suffered by the aggrieved person in order for him or her to recover such damages. *Morgan v. Secretary of Housing & Urban Development, supra.*

 Here, it is undisputed that the tenant was the only person who claimed to have been injured by the landlord's discriminatory housing practice. The tenant's family members were not named as parties. Nevertheless, the ALJ clearly relied on injuries to the family members in determining the damages award.

In the findings awarding damages for emotional distress, the ALJ made several references to the tenant "and her family." In explaining the conclusions, the ALJ also determined that "[b]ecause of the egregiousness of [the landlord's] conduct and the severity of the [tenant] *and her family's emotional distress and humiliation,* substantial emotional damages are warranted in this matter" (emphasis added). In awarding damages for emotional distress in the amount of $10,000, the ALJ again relied on the emotional injuries suffered by the tenant "and her family."

At issue, therefore, is whether a nonparty may be considered an aggrieved person under § 24–34–501(1). We conclude a nonparty may not be so considered.

We acknowledge there was evidence presented at the hearing that the tenant's family suffered significant embarrassment, humiliation, and emotional distress as a result of the landlord's conduct. However, we are aware of no authority that would allow the award of civil damages to a nonparty in this type of proceeding, and such an award would appear to violate basic notions of due process. *See Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 67, 396 P.2d 933, 944 (1964)(reversing judgments where names and descriptions of the parties in the verdicts did not conform to the pleadings). *See generally Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

In support of the proposition that unnamed persons can recover damages under the CFHA as long as they are associated with the named complainant, the tenant relies heavily on *Sams v. United States Department of Housing & Urban Development,* No. 94–1695, 1996 WL 13810 (4th Cir. Jan.16, 1996)(unpublished opinion). However, in *Sams,* the determination of reasonable cause and charge of discrimination against the landlord was filed "on behalf of" the parents and their five children.

In contrast, the notice of hearing and formal complaint filed in this case noted the relationship between the tenant, her husband, and her son, but only the tenant was named as an "aggrieved person." Thus, contrary to the tenant's contention, *Sams* does not support her contention that an unnamed

party may be an "aggrieved person" and recover damages under the CFHA.

We therefore conclude the tenant's family members were not aggrieved persons under the statute because they were not named in the complaint. Because the ALJ relied on the emotional injuries suffered by the tenant's family in entering its award of damages under § 24–34–508(1)(e), the damages must be reconsidered. *See Lewis v. Buckskin Joe's, Inc., supra.*

### B. Damages Based on Landlord's Nonparticipation

■ In awarding emotional distress damages to the tenant and her family, the ALJ repeatedly recited, as an aggravating factor, the landlord's failure to answer the formal complaint and to appear at the hearing. Yet, the ALJ provided no explanation how the landlord's failure to answer the complaint could have caused the tenant emotional distress, or how his failure to appear "compounded" the egregiousness of his conduct.

■ A party has an absolute right not to appear and defend in a civil case. *See Homsher v. District Court,* 198 Colo. 465, 467, 602 P.2d 5, 6 (1979)("Where the defendants ... fail to answer a complaint or to make any effort to appear before the trial court, the trial court is not obliged to, and indeed should not, assume a position adversarial to the plaintiffs and representative of the parties declining to appear."); *Salter v. Board of County Commissioners,* 126 Colo. 39, 47, 246 P.2d 890, 894 (1952)("[C]ontempt is not a penalty that goes along with default judgment."). The tenant has cited no authority, nor are we aware of any, indicating that a party's decision not to defend himself or herself in an administrative or civil proceeding is an appropriate factor to consider when calculating damages for emotional distress.

We further observe that the ALJ based the $10,000 award for emotional distress on the fact that this amount was the maximum civil penalty allowed under the CFHA for a first-time violator. *See* § 24–34–508(1)(f)(I), C.R.S.2001. However, the ALJ did not explain why this statutory penalty was the appropriate measure of the tenant's emotional distress, and the CFHA does not specify or suggest this is a proper measure of damages but only provides that it is a maximum civil penalty.

For these reasons, we conclude the award of damages must be reversed and reconsidered on remand.

### C. Civil Penalty

■ The Commission may also "assess a civil penalty against the respondent ... [n]ot to exceed ten thousand dollars if the respondent has not been adjudged to have committed any prior discriminatory housing practice." Section 24–34–508(1)(f)(I). The amount of a civil penalty, which is payable to the state, should be proportional to the seriousness of the conduct. *See Szkoda v. Illinois Human Rights Commission,* 302 Ill. App.3d 532, 236 Ill.Dec. 88, 706 N.E.2d 962 (1998)(interpreting a similar provision of the Illinois Human Rights Act); *see also Morgan v. Secretary of Housing & Urban Development, supra,* 985 F.2d at 1461.

■ The purposes of civil penalties include compensating the public by shifting costs from the public to the perpetrator, *see True v. United States,* 894 F.2d 1197 (10th Cir.1990), deterring future harmful conduct, *see May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967 (Colo.1993), and punishing the perpetrator, *see Hall v. Walter,* 969 P.2d 224 (Colo.1998). Civil penalties are not meant to compensate the injured party.

In *May Dep't Stores Co. v. State ex rel. Woodard, supra,* 863 P.2d at 972, the supreme court explained the purpose of civil penalties in the context of a consumer fraud case:

Civil penalties serve several important functions, one of which is as a deterrent against future unlawful practices.... [T]he purpose of the civil damage award in this case is not to make an injured party whole, but to punish wrongdoers for illegal acts.... The deterrent goal is also demonstrated by the fact the award of monetary damages in civil penalties is to the State and not to the harmed individual.

Because the [Colorado Consumer Protection Act (CCPA)] civil penalty requirement is intended to punish and deter the wrongdoer and not to compensate the injured party, the CCPA is intended to proscribe deceptive acts and not the consequences of those acts.

Like the CCPA, the CFHA permits civil penalties to be assessed against the wrongdoer for his or her unlawful conduct and requires that the award of monetary damages for the civil penalty be paid to the state. Thus, *May* offers considerable guidance regarding the factors the ALJ should consider in imposing a civil penalty.

Here, the ALJ did not mention any of the permissible factors discussed in *May* or the other cases cited above. To the contrary, as justification for assessing the maximum penalty against the landlord, the ALJ heavily relied on impermissible factors including the emotional distress to the tenant and her family members, *see May Dep't Stores Co. v. State ex rel. Woodard, supra*, and the landlord's failure to answer the complaint and to appear at the hearing.

We therefore conclude the $10,000 civil penalty assessed against the landlord cannot stand. On remand, the ALJ should consider the factors discussed by in *May Dep't Stores Co. v. State ex rel. Woodard, supra*, and *Hall v. Walter, supra*.

### D. Jury Trial

We also disagree with the landlord's contention that he is entitled to a jury trial. Section 24–34–504(4.1), C.R.S.2001, provides in relevant part:

After [the] notice and complaint is issued by the commission, the ... respondent ... may elect to have the claims asserted in the charge decided in a civil action in lieu of an administrative hearing. Such election shall be made in writing within twenty days after receipt of the notice and complaint issued by the commission.

Because the landlord never elected to have the charge decided in a civil action, we conclude he is not entitled to a jury trial on remand.

### E. Mitigation of Damages

The landlord also contends the tenant failed to mitigate her damages. Because the landlord did not appear at the first damages hearing, this issue was not raised before the ALJ, and we do not address it. *See Bigby v. Big 3 Supply Co.*, 937 P.2d 794 (Colo.App. 1996). On remand, the ALJ should resolve the mitigation of damages issue if it is properly raised and if it has not been waived. *See Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087 (1976)(the burden is on the defendant to prove that the plaintiff failed to mitigate damages); *see also Cantrell v. Knoxville Community Development Corp.*, 60 F.3d 1177 (6th Cir.1995)(in employment discrimination context, defendant employer has the burden to prove that plaintiff employee failed to mitigate damages).

The order is affirmed in all respects except that the award of damages and the civil penalty are reversed, and the case is remanded to the Commission with directions to remand to the ALJ for a new hearing on the damages and penalty consistent with the views expressed in this opinion.

Judge METZGER and Judge KAPELKE concur.