**Tonya SMITH, individually and as next friend and parent of K.S. and I.S., minor children; Joseph Smith, a/k/a Rachel Smith, individually and as next friend and parent of K.S. and I.S., minor children; K.S., a minor child; and, I.S., a minor child, Plaintiffs,**

v.

**Deepika AVANTI, Defendant.**

**Civil Action No. 16-cv-00091-RM-MJW**

United States District Court,
D. Colorado.

Signed 04/05/2017

Karen Lee Loewy, Omar Francisco Gonzalez–Pagan, Lambda Legal Defense & Education Fund–New York, New York,

NY, Matthew Paul Castelli, Benjamin Nichols Simler, Holland & Hart, LLP–Denver, Denver, CO, for Plaintiffs.

Jason T. Pink, Melanie Bailey Lewis, Berg Hill Greenleaf & Ruscitti, LLP, Boulder, CO, for Defendant.

## ORDER

RAYMOND P. MOORE, United States District Judge

This matter is before the Court on Plaintiffs' Unopposed Motion for Partial Summary Judgment ("Motion") (ECF No. 28), seeking summary judgment on the issue of liability as to all claims for relief. Plaintiffs do not seek summary judgment as to the amount of damages or any other relief which they are claiming. Defendant does not oppose the motion; she did not file a response. The Court has considered the Motion; applicable statutes, rules, and case law; and relevant portions of the court file. Upon such consideration, and being otherwise fully advised, the Court GRANTS the Motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Defendant Deepika Avanti's refusal to rent properties she owns in Gold Hill, Colorado to Plaintiffs. Defendant refused because of Plaintiff Tonya and Rachel Smith's[1] "kids and the noise" and their "unique relationship."

Defendant is the owner of real property located at 698 Dixon Road, Gold Hill, Colorado. Located at that address are three free-standing buildings: one building that was subdivided into two separate living spaces (the "townhouses"); one building that was converted into a three-bedroom living space; and a third building that was converted into a fourth living space (collectively, "Properties"). As of April 24, 2015, Defendant had rented one of the townhouses to a couple (Matthew and Chiara) and was advertising on Craigslist the other townhouse ("Townhouse") as available for rent.

Rachel Smith is a transgender woman. She and Tonya Smith (the "Smiths") have been married for more than five years. They are the parents of Plaintiff K.S. and I.S., minor children (the Smiths and their children, collectively, the "Smith Family" or "Plaintiffs"). In April 2015, Plaintiffs, residents of Colorado, began looking for a new home as the place they were living in was being sold. On April 24, 2015, the Smiths found Defendant's rental advertisement on Craigslist for the Townhouse; Tonya Smith responded to the advertisement and emailed Defendant. In the email, among other things, Tonya discussed her family, including mentioning that Rachel is transgender. Defendant responded by email that the Townhouse and the three-bedroom living space were available for rent, and asked Tonya to send photos of all of them. Tonya replied via email; she agreed to meet with Defendant that evening, and sent a photo of the Smith Family as requested.

The parties met that evening at the Properties. The Smith Family viewed the Townhouse and the three-room housing unit. They also met the family that lived in the other townhouse. After returning home, Defendant emailed Tonya Smith twice that night. In the first email, Defendant told Tonya they were not welcome to rent the Townhouse because of Matt and Chiara's concerns regarding their children

---

1. Plaintiff Rachel Smith's legal name is Joseph Smith, but she is known by and uses the name Rachel Smith in accordance with her female gender identity. (Motion, page 1.) The Motion refers to Joseph Smith as Rachel Smith, and the Court does so as well.

and "noise." In the second email, Defendant said she talked to her husband and they have "kept a low profile" and "want to continue it" that way. Essentially, Defendant conveyed she would not rent either residence to the Smith Family.

The next morning, April 25, Tonya responded to Defendant's email, asking her what she meant by "low profile." Defendant replied that the Smiths' "unique relationship" and "uniqueness" would become the town focus and would jeopardize Defendant's "low profile" in the community; and that Defendant talked to a "psychic friend" who "has a transvestite friend herself." Defendant refused to rent either of the properties to the Smith Family. But, Defendant continued to attempt to rent housing on her property at Gold Hill.

Plaintiffs searched for several months thereafter for another place to live, but were unable to find a rental before they had to move out of their apartment. Thus, they had to move into Rachel's mother's house for a week; in doing so, they had to get rid of many of their possessions as the house was too small for them to keep all of their belongings. They finally were able to move into another apartment on July 1, 2015, but it does not meet their family's needs as well. Defendant's Properties were of higher quality, were located in a better school district, and had nicer surroundings. The move also required an hour's commute for Rachel, whereas Defendant's Properties would have only required a 20 minutes' commute for work. Rachel has since changed jobs, which is closer to the parties' new apartment.

As of result of Defendant's actions, Plaintiffs filed this lawsuit asserting the following claims: (1) Count I (the Smiths)—Sex Discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) & (c); (2) Count II (Smith Family)—Discrimination based on Familial Status in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) & (c); (3) Count III (the Smiths)—Sex Discrimination in violation of the Colorado Anti–Discrimination Act, C.R.S. § 24–34–502; (4) Count IV (the Smiths)—Sexual Orientation Discrimination in violation of the Colorado Anti–Discrimination Act, C.R.S. § 24–34–502; and (5) Count V (Smith Family)—Discrimination based on Familial Status, in violation of the Colorado Anti–Discrimination Act, C.R.S. § 24–34–502. As stated, Plaintiffs move for summary judgment on the issue of liability as to all claims.

## II. LEGAL STANDARD

Plaintiffs' Motion is unopposed. Nonetheless, the Court may not grant an unopposed motion for summary judgment unless the moving parties have met their burden of production and demonstrate they are legally entitled to judgment under Rule 56. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002); Fed. R. Civ. P. 56(e) (if a party does not properly respond, summary judgment may be entered against the adverse party, if the movant is entitled to it). Accordingly, the Court will proceed to evaluate whether Plaintiffs have met the Rule 56 standard for summary judgment in their favor.

Under this standard, the moving party must demonstrate there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *E.g., Reed v. Bennett*, 312 F.3d at 1195. "If [the moving party] has not, summary judgment is not appropriate, for no defense to an insufficient showing is required." *Id.* (quotation marks and alteration omitted). "The court should accept as true all material facts asserted and properly supported in the summary judgment motion." *Id.* Where those facts entitle the moving party to judgment as a matter of

law, the court should grant summary judgment. *Id.*

## III. ANALYSIS

### A. Counts I & II—Discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) & (c)

#### 1. The Fair Housing Act and Defendant's Properties and Emails

■ Plaintiffs contend Defendant violated two provisions of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a) & (c). Under § 3604(a), it is unlawful "[to] refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... sex, familial status, or national origin." And, under § 3604(c), it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... sex, ... familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." In other words, the FHA prohibits refusals to rent or negotiate for the rental of a dwelling space on the basis of sex and/or familial status, as well as statements indicating such discrimination. *Morgan v. Sec'y of Hous. & Urban Dev.*, 985 F.2d 1451, 1457 (10th Cir. 1993). The Court considers each provision in turn.

■ Starting with § 3604(a), the undisputed material facts show that Defendant refused to rent and negotiate for the rental of the Townhouse and the three-bedroom housing unit. Plaintiffs have also shown that such properties constitute a "dwelling" within the meaning of the FHA. *See* 42 U.S.C. § 3602(b) (" 'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families....")[2] As for the last requirement, that Defendant refused to rent to Plaintiffs "because of sex" and/or "because of familial status," the Court addresses this requirement below.

■ Next, as to § 3604(c), Defendant's emails to Plaintiffs certainly were made "with respect to the sale or rental of a dwelling." The question is whether such emails were "statements" within the coverage of this section. Plaintiffs cited to no legal authority to support their argument and the Court's independent research discloses no controlling case law on the issue. Nonetheless, the Tenth Circuit has stated the FHA prohibits statements indicating prohibited discrimination, *Morgan*, 985 F.2d at 1457, and Defendant's emails certainly were "statements" concerning reasons why she would not rent to Plaintiffs. *See* https://www.merriamwebster.com/dictionary/statement (last visited April 4, 2017) ("statement" means "something stated" or a "declaration or remark"). Accordingly, the Court finds them to be "statements." As with Plaintiffs' claim based on § 3604(a), the Court addresses below § 3604(c)'s last inquiry of whether Defendant's statements were discriminations

---

**2.** As to whether such "dwellings" are exempt under 42 U.S.C. § 3603, Plaintiffs argue they are not. Under 42 U.S.C. § 3603(b), as applicable here, § 3604(a) does not apply to "any single-family house sold or rented by an owner: *Provided,* That such private individual owner does not own more than three such single-family houses at any one time: *Provid-* *ed further, ....*" (Emphasis in original.) Here, even assuming the "dwellings" Defendant owns constitute "single-family houses," Defendant owned more than three at the time of the alleged discriminatory acts. Accordingly, Defendant's Properties are not exempt dwellings.

"based on sex" and/or "based on familial status."

### 2. Count I—Discrimination Based on Sex Stereotypes

 Plaintiffs argue that discrimination based on sex stereotypes is "discrimination based on sex" under the FHA. The Tenth Circuit looks to Title VII discrimination cases for guidance in addressing discrimination issues under the FHA. *Mtn. Side Mobile Estates Partnership v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1251 n.7 (10th Cir. 1995) (citing *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993)). And, as the law currently stands, the Tenth Circuit "has explicitly declined to extend Title VII protections to discrimination based on a person's sexual orientation." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007); *see also Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Larson v. United Air Lines*, 482 Fed.Appx. 344, 348 n.1, 351 (10th Cir. 2012). In addition, "discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII." *Etsitty*, 502 F.3d at 1222. However, the Smiths' sex discrimination claim at issue is brought on the basis of gender stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–1, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) and its progeny, and recognized as a possibility by the Tenth Circuit in *Etsitty*.

In *Etsitty*, the transgender plaintiff argued, among other things, that she was entitled to protection as a biological male for failing to conform to social stereotypes about how a man should act and appear. The Tenth Circuit recognized that a number of courts have relied on *Price Waterhouse* to expressly recognize a Title VII cause of action based on an employee's failure to conform to stereotypical gender norms. The Tenth Circuit, however, did not reach the issue of "whether discrimination based on an employee's failure to conform to sex stereotypes always constitutes discrimination 'because of sex'" and "whether such a claim may extend Title VII protection to transsexuals who act and appear as a member of the opposite sex," but assumed, without deciding, that such a claim is available. *Etsitty*, 502 F.3d at 1224. And, in a footnote, the Tenth Circuit cited with approval to *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004), quoting the Sixth Circuit's statement that "[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender nonconformity." *Etsitty*, 502 F.3d at 1224 n.2. Further, subsequently, the Tenth Circuit has implicitly recognized that claims based on failure to conform to stereotypical gender norms may be viable. *See McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 711 (10th Cir. 2012); *Potter v. Synerlink Corp.*, 562 Fed.Appx. 665, 674 (10th Cir. 2014).

 In this case, the Smiths contend that discrimination against women (like them) for failure to conform to stereotype norms concerning to or with whom a woman should be attracted, should marry, and/or should have children is discrimination on the basis of sex under the FHA. The Court agrees. Such stereotypical norms are no different from other stereotypes associated with women, such as the way she should dress or act (*e.g.*, that a woman should not be overly aggressive, or should not act macho), and are products of sex stereotyping. *See Price Waterhouse*, 490 U.S. at 250, 109 S.Ct. 1775 ("an employer who acts on the basis of a belief

that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender"); *id.* at 251, 109 S.Ct. 1775 ("we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group").

The Smiths also contend that discrimination against a transgender (here, Rachel) because of her gender-nonconformity is sex discrimination. In other words, that discrimination based on applying gender stereotypes to someone who was assigned a certain sex (here, male) at birth, constitutes discrimination based on sex. To the extent the Smiths contend that discrimination against Rachel because she does not conform to gender norms of a male, *e.g.*, does not act or dress like the stereotypical notions of a male, the Court agrees. *See, e.g., Smith,* 378 F.3d at 575. To the extent the Smiths argue something more—that the FHA has been violated based on sex stereotyping as they have been discriminated against solely because of Rachel's status as a transgender, and that the Smiths were discriminated against because of their sexual orientation or identity—the Court declines to do so.

The Court declines to do so for two reasons. First, the Motion as to Count I is based on sex stereotyping, and Count I's reliance on sex stereotype as "discrimination based on sex" did not include such allegations. Second, Count I also relies on discrimination based on sexual orientation and gender identity/expression, but the Motion was not based on such theories. To the extent Plaintiffs are attempting to bootstrap such other theories onto their sex stereotype theory, the Court declines to consider something not pled.

■ Applying the principles stated above, the undisputed material facts show Defendant violated the FHA by discriminating against the Smiths based on their sex. For example, in referring to the Smiths' "unique relationship" and their family's "uniqueness," Defendant relies on stereotypes of to or with whom a woman (or man) should be attracted, should marry, or should have a family.[3] Accordingly, the Motion is granted in favor of the Smiths as to Count I based on sex stereotypes of men and/or women.

### 3. Count II—Discrimination based on Familial Status

■ In Count II, Plaintiffs allege Defendant violated the FHA by discriminating against them based on their familial status. 42 U.S.C. § 3604(a) & (c). The FHA defines "familial status" as "one or more individuals (who have not attained the age of 18 years) being domiciled with … a parent or another person having legal custody of such individual or individuals …." 42 U.S.C. § 3602(k). Here, the Smith Family consists of two parents and two minor children who were—and are—domiciled together. They sought to rent the Townhouse as a family, and the undisputed material facts show Defendant refused to rent to the Smith Family based on their familial status—because they were a family. Defendant clearly stated, in writing, that she preferred to have a couple without children living in the Townhouse. As such, Defendant violated §§ 3604(a) and 3604(c) of the FHA in preferring to rent the Townhouse to someone without children and in refusing, in the emails, to rent the Townhouse to the Smith Family. *See, e.g., Morgan,* 985 F.2d at 1457 (upholding ALJ's finding that mobile home

**3.** The Court considers such facts admitted/undisputed in light of the evidence, Defendant's non-opposition to the Motion, and Defendant's failure to dispute the facts. *See* Fed. R. Civ. P. 56(e)(2), (3), and (4).

park owner violated § 3604 of the FHA by enforcing "adults only" policy and refusing to allow the sale of a mobile home to a family with a minor child); *Gorski v. Troy*, 929 F.2d 1183, 1189 (7th Cir. 1991) (landlords' alleged expressed preference for tenants without children was discriminatory, in violation of section 3604(c)). Summary judgment is therefore granted to the Smith Family as to Count II.

## B. Counts III, IV, & V—Discrimination Under the Colorado Anti–Discrimination Act

### 1. The Colorado Anti–Discrimination Act applies to Defendant and her Properties

Under the Colorado Anti–Discrimination Act ("CADA"), Colo. Rev. Stat. § 24–34–502(1)(a), "[i]t shall be an unfair housing practice and unlawful and hereby prohibited: (a) For any person to refuse to . . . rent, or lease, . . . or otherwise make unavailable or deny or withhold from any person such housing because of . . . sex, sexual orientation, . . . [or] familial status. . . ." It is also unlawful for any person "to cause to be made any written or oral inquiry or record concerning the . . . sex, sexual orientation, . . . [or] familial status . . . of a person seeking to purchase, rent, or lease any housing . . . ." Colo. Rev. Stat. § 24–34–502(1)(a). "Housing" "means any building, structure . . . or part thereof offered for . . . rent . . . ." Colo. Rev. Stat. § 24–34–501(2). And, "person" includes "any owner." Colo. Rev. Stat. § 24–34–501(3). Under such definitions, as applied to the undisputed material facts, Defendant was a "person" whose Properties are subject to the CADA. The question is whether Defendant's actions violated the CADA, as Plaintiffs have alleged.

### 2. Count III—Discrimination Based on Sex

 The CADA contains several definitions, but "sex" is not one of them. *See* Colo. Rev. Stat. §§ 24–34–301; 24–34–501. But, "federal cases interpreting the Federal Fair Housing Act are persuasive in interpreting provisions of the CFHA."[4] *May v. Colo. Civil Rights Comm'n*, 43 P.3d 750, 756 (Colo. App. 2002) (citing *Boulder Meadows v. Saville*, 2 P.3d 131 (Colo. App. 2000)). As discussed above, discrimination based on sex stereotypes, as alleged, are protected under the FHA. The Court finds no reason why the analysis under the FHA should not be equally applicable under the CADA. Accordingly, in refusing to rent or make unavailable the properties Plaintiffs' viewed, Defendant engaged in unlawful conduct and discriminated against the Smiths "because of sex" in violation of the CADA. In addition, through her email setting forth the reasons ("uniqueness") for her refusal to rent to the Smiths, Defendant unlawfully "cause[d] to be made" a "written record" "concerning the sex" of the Smiths. Summary judgment is therefore granted in favor of the Smiths as to Count III.

### 3. Count IV—Discrimination Based on Sexual Orientation

 The Smiths assert Defendant violated the CADA by discriminating against them on the basis of their sexual orientation and Rachel's transgender status. Under the CADA, "sexual orientation" "means an individual's orientation toward . . . homosexuality . . . or transgender status . . . ." Colo. Rev. Stat. § 24–34–301(7). Thus, the CADA expressly prohibits discrimination based on a person's sexual orientation, including transgender status. And, based on the undisputed material facts, reasonable minds could not differ

---

**4.** The Colorado Fair Housing Act is a part of the Colorado Anti–Discrimination Act.

that Defendant's conduct and statements (via email) also encompasses unlawful discrimination against the Smiths due to their relationship and Rachel's transgender status. Defendant's written statements (record) concerning the Smiths' "uniqueness" and that she also has a "transvestite" friend demonstrate her refusal to rent to the Smiths was also because of their sexual orientation. As such, Defendant violated the CADA based on sexual orientation, which includes Rachel's transgender status. Summary judgment in favor of the Smiths is also appropriate as to Count IV.

### 4. Count V—Discrimination Based on Familial Status

As stated, CADA prohibits discrimination based on "familial status." "Familial status" "means one or more individuals, who have not attained eighteen years of age, being domiciled with a parent or another person having legal custody of or parental responsibilities for such individual or individuals...." Colo. Rev. Stat. § 24–34–501(1.6). For the same reasons the Court found Defendant liable under the FHA for discrimination based on familial status, Defendant is liable under this provision of the CADA. Here, Defendant refused to rent the Townhouse to the Smith Family because they have minor children, writing in her email of her preference for someone without children and noise. Accordingly, summary judgment in favor of Plaintiffs is appropriate as to Count V.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** that Plaintiffs' Unopposed Motion for Partial Summary Judgment (ECF No. 28) is **GRANTED.**